## PRATHER v. THE STATE BANK.

The clerk of a Circuit Court has no right to receive payment of a judgment otherwise than in gold and silver, without the authority of the owner of the judgment.

An offer by a creditor to his debtor to accept a thing in payment of the debt upon a condition which is not assented to by the debtor nor waived by the creditor, does not amount to an acceptance.

The agent of a judgment-debtor, residing in *Jennings* county, sent to the creditor at *Madison*, notes of the state bank and treasury notes to be received at par in payment of the judgment, but no direction was given as to what should be done with the notes in case of the creditor's refusal thus to accept them. The latter refused to accept them at par, and promptly notified the agent of the non-acceptance, requesting further directions, but retained them for about two months, and then returned them. *Held*, that the delay could not be construed to imply an acceptance of the notes in payment of the judgment.

APPEAL from the *Jennings* Circuit Court.

PERKINS, J.—Bill in chancery by *Hiram Prather* against the *State Bank of Indiana*, *John Walker*, *Achilles Vawter*, and *Alanson Andrews*, praying an injunction upon the collection of a judgment at law. Answers and replications were filed. No depositions were taken. The cause was submitted upon the bill, answers, and exhibits, and the bill was dismissed. The facts in the cause are, that at the *March* term, 1841, of the *Jennings* Circuit Court,

the said *State Bank*, for the use of her branch at *Madison*, obtained a judgment against said *Prather*, *Walker*, *Vawter*, and *Andrews*, for 548 dollars and 62 cents, and costs; that on the 20th day of *January*, 1842, a *fi. fa.* was issued on said judgment and placed in the hands of the proper sheriff; that on the 26th of *February* following, and while said execution was in the hands of the sheriff, said *Prather* paid the amount of said judgment to said *John Walker*, a co-defendant therein, and the clerk of said *Jennings* Circuit Court, in manner specified in the following exhibit, to-wit:

"I, *Hiram Prather*, have this day paid to *John Walker*, clerk of the *Jennings* Circuit Court, five hundred and eighty dollars and six cents, the amount of a judgment and interest against me in favor of the *State Bank of Indiana*—one hundred and twenty-five dollars in state bank paper and the balance in treasury notes. I do bind myself to make the amount bankable and to keep the said *Walker* harmless. *February* 26, 1842. *Hiram Prather*."

The clerk executed to *Prather* this receipt, viz.:

"In the *Jennings* Circuit Court. *State Bank of Indiana* v. *John Walker*, *Achilles Vawter*, *Hiram Prather*, and *Alanson Andrews*. Assumpsit. Received of *Hiram Prather* five hundred and eighty dollars and six cents, the full amount of the above judgment and interest, costs excepted, this 26th *February*, 1842. *John Walker*, clerk."

Said clerk also made the following entry under the judgment: "The above judgment is paid off, costs excepted. *February* 26, 1842. $580.06."

*Prather* subsequently paid the costs.

Soon after receiving said paper from *Prather*, *Walker* forwarded it, by *John Lodge*, a conductor on the *Madison* railroad, to the branch bank at *Madison*. On its delivery to the bank, the cashier wrote to said *Walker* as follows:

"*Madison*, *March* 1st, 1842. Sir: We received yesterday, by Mr. *Lodge*, the package of scrip and *Indiana* notes. I think Mr. *Prather* ought not to expect us to take those notes at par. They are now at a discount of 25

*May Term, 1852.*

PRATHER
v.
STATE BANK.

*per cent.* To get bankable money we will have to lose that. I will be willing to lose a part, but Mr. *Prather* ought also to lose a part. You know that we lent him bankable money, at six *per cent.* interest, which he pledged himself to pay to us without renewal; but he failed, and we have had to employ attorneys at a loss of five *per cent.* to us; so that I really think he ought to lose a part. Please write to me on the subject as soon as you can. Very respectfully, *J. F. D. Lanier.*"

The date and contents of the response to this letter do not appear, but it seems that in the course of a couple of months, *Walker* wrote requesting a receipt for the paper as a satisfaction of the judgment; in answer to which, Mr. *Lanier* immediately replied that it would not be so received, and returned the package. *Walker*, instead of redelivering it to *Prather*, subsequently appropriated it to his own use.

Nothing further appears to have been done till 1845, when the bank at first brought suit on the official bond of *Walker*, the clerk, but afterwards dismissed it and procured a new execution on the judgment against *Prather* and his co-defendants, whereupon this bill for an injunction was filed. *Walker* is insolvent.

Admitting, (without deciding,) for the purposes of this case, that the clerk possessed the same authority in regard to it as though he had personally no interest in the cause; and that he had the right to receive payment of the judgment while an execution was in the hands of the proper officer for its collection, still he had not, as clerk, the power to receive payment of said judgment in anything but gold and silver, without a previous authority from the plaintiff to do so. No clerk, nor sheriff, nor constable, as such, has a right, under the constitution and law, to receive payment of a judgment in anything but the legal currency of the country. *Griffin* v. *Thompson*, 2 How. U. S. Rep. 244.— *McFarland* v. *Gwinn*, 3 id. 717. No previous authority to receive paper is pretended to have been given in this case. The transaction, therefore, between *Prather* and

*Walker*, by which the former delivered to the latter an amount of bank notes and scrip nominally equal to the amount of the judgment, was not a payment of said judgment. But though there was no payment at the time, still, the bank may have ratified the act of the clerk afterwards and accepted the paper in payment. This ratification may have been express, or it may be implied from circumstances.

We must inquire whether it has taken place. There has been no express acceptance of the paper. On the contrary, there was an express refusal to unconditionally accept it when sent to the bank; and a conditional acceptance, the condition not being afterwards assented to by one party nor waived by the other, amounts to no acceptance. And there was afterwards an absolute refusal to accept when the paper was returned. There is no circumstance from which an acceptance can be implied except the delay of the bank in returning the paper. The record does not fix the period of this delay, but the plaintiff claims it to have been two months. Admit it, and we think no negligence imputable to the bank. *Prather* had delivered. to *Walker* that which he knew was not a legal tender in payment of the judgment, with the view of having *Walker*, as his agent, procure the acceptance of it by the plaintiff in payment. *Walker* sent the thing delivered to the bank, but gave no direction as to the disposition to be made of it in case of a refusal by the bank to accept it. It was his duty to have given such direction. He could not require the bank to send back the paper, which she had never asked to be sent to her, at her own risk; and the bank would not, perhaps, have been justified, in the absence of instructions, in sending it back at the risk of *Walker*. On her refusal to accept the paper, therefore, she would properly suffer it to remain in her custody till it was called for by him. And it was the duty of *Prather* to look to the conduct of his agent, and see that the business was properly transacted; for, as we have said, *Walker* had not the power to receive this paper, as clerk, in payment of the judgment, and, hence

May Term,
1852.

could only receive it as the agent or depository of *Prather*. If *Prather* has been negligent, as is evidently the case, in calling his agent to account, he must suffer the consequence. The bank, immediately on the paper being left with her, notified *Walker* that it would not be accepted at par, and requested his further direction. She returned the deposit as soon, perhaps sooner, than she was required to.

We think the bill was rightly dismissed.

*Per Curiam.*—The decree is affirmed, with costs.

*J. G. Marshall*, for the appellant.

*S. C. Stevens*, for the appellee.